UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS FRANCISCO BARRON,<br><br>　　　　　　　　　　　Petitioner,<br><br>v.<br><br>DANIEL PARAMO, Warden,<br><br>　　　　　　　　　　　Respondent. | Case No.: 14cv1968 BEN (DHB)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

On August 21, 2014, Petitioner Luis Francisco Barron ("Petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner seeks relief from his November 8, 2011 conviction in San Diego Superior Court Case No. SCD230124 for first degree murder and assault with a firearm. Petitioner alleges ineffective assistance of trial counsel as grounds for relief.

The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** the Petition for Writ of Habeas Corpus be **DENIED**.

///
///
///

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the unpublished California Court of Appeal Opinion in *People v. Barron*, Case No. SCD230124 (Cal. Ct. App. March 6, 2013). (Lodgment No. 6.) The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

> *The Murder*
>
> Around 1:15 a.m. that same morning [August 27, 2010], a white SUV approached Lindbergh Park. About 15 seconds later, a gunshot rang out. Joanna Vargas, who was at the park with Jose Flores and two others (including Mr. Cardenas), fell to the ground; Flores, who had been dancing with Vargas, felt something strike him. After the shot, Cardenas saw the SUV, with its headlights off and windows open, cruising past slowly. The SUV was occupied by three or four people.
>
> *[Petitioner]'s Companions' Testimony*
>
> Around 8:00 p.m. on August 26, Mr. Zaragosa and Mr. Mendoza met [Petitioner] at the home of [Petitioner]'s girlfriend (Ms. Ikonen) and the group consumed alcohol. Zaragoza testified he had four "glasses" of whiskey, [FN2] and also consumed two Xanax pills, and [Petitioner] drank about the same amount of alcohol. Mr. Mendoza testified he drank less than the others, drinking only two glasses of whiskey and (after the group took a break to go to the store to buy beer) later drank a beer. Mendoza saw [Petitioner] consume one Xanax pill. The group left the house around 9:30 p.m. because [Petitioner] wanted to acquire some spray cans of paint to go "tagging."
>
> [FN2] Zaragosa stated they drank from oversized coffee mugs, and each of the cups he drank was filled half to three-quarters full.
>
> Mendoza testified the alcohol he consumed did not impair his faculties or awareness, and [Petitioner] did not appear to be falling down drunk or to slur his words during the course of the evening. Ms. Ikonen also testified [Petitioner] was not "particularly drunk," was not "stumbling over," and was holding a conversation without slurring his words.

>	Ikonen drove the group to [Petitioner]'s mother's apartment in Ikonen's SUV. [Petitioner] went inside the apartment; Zaragosa and Mendoza got out and waited next to the SUV, and Ikonen remained in the driver's seat. When [Petitioner] emerged and came back to the SUV, he was carrying a shotgun. Ikonen, who had seen two men (Westbrooks and Pope) watched [Petitioner] return to the car, told [Petitioner] the two men had seen him. [Petitioner], Zaragosa and Mendoza then approached the two men and [Petitioner] "got into . . . one of the gentlemen's face" and appeared to be aggressively confronting him. During the confrontation, [Petitioner] pulled out the shotgun and brandished it at one of the men, asking "Are you talking shit?" causing the man to back away.
>
>	At one point, Zaragosa saw Mendoza chasing another man while [Petitioner] remained standing with the black man. When Mendoza returned, he, [Petitioner] and Zaragosa went back to the car and got in. [Petitioner] told Ikonen to drive away, and at some point explained to her that the reason he had chosen not to "do something" was because the black man whom [Petitioner] was confronting was "an old man." [FN3] [Petitioner] put the shotgun down on the floor of the car as they drove away.
>
>	[FN3] Westbrooks was 49 years old at the time of trial.
>
>	Mendoza asked to be dropped off at his girlfriend's house, near the site of the murder. As they drove past the park, [Petitioner] asked Ikonen to slow down. Suddenly, Mendoza saw [Petitioner] pointing the shotgun out the window and heard the "boom" when he fired. The others were startled, and were exclaiming "what the fuck," and "what's going on," but [Petitioner] told Ikonen to shut up and said "I think I hit somebody" or "I think I just hit a girl." [Petitioner] instructed Ikonen to stop the car, after which he opened the door, got out and retrieved the gun shell. He then got back into the car and urged Ikonen to "go, go, go."
>
>	Iknonen drove to Ocean Beach near Sunset Cliffs before finally stopping. They threw the gloves [Petitioner] was wearing over the cliff, [Petitioner] hid the shotgun in a bush, and the group then drove off. After a short stop at an apartment where he conferred with a friend, [Petitioner] announced they were going to drive to Mexico and explained he wanted to get the car cleaned up to get rid of gunpowder traces. Once there, he let Mendoza and Zaragosa out to find their own way home, but not without warning them that "snitches get stitches," to deter them from reporting the incident.
>
>	[Petitioner] and Ikonen spent the night at [Petitioner]'s father's house in Mexico while the car was being cleaned. [Petitioner] told his

>father that he had shot a girl.  The day after the shooting, Mrs. Campbell (who had a child with [Petitioner]) confided to a friend that [Petitioner] had phoned her, crying and hysterical, and told her "I didn't mean to shoot the girl.  I meant to hit the boy."

(Lodgment No. 6 at 2-5.)

### B.     Procedural Background

On November 10, 2010, the San Diego County District Attorney's Office filed an amended information charging Petitioner with one count of murder, under California Penal Code § 187(a) with a special allegation for the personal discharge of a firearm, California Penal Code § 12022.53(d), and one count assault with firearm, under California Penal Code § 245(a)(2) with a special allegation for the personal use of a firearm, under California Penal Code §12022.5(a).  (Lodgment No. 1 at 3-4).

Following a jury trial, Petitioner was convicted of first degree murder under Penal Code § 187, subdivision (a) and assault with a firearm under Penal Code § 245, subdivision (a)(2).   (Lodgment No. 1 at 280, 282.)  The jury found true enhancing allegations that Petitioner discharged and personally used a firearm in connection with the crimes.  (*Id.*)  On January 6, 2012, Petitioner was sentenced to an indeterminate term of 50 years to life, plus a consecutive determinate term of 14 years.  (Lodgment No. 1 at 285.)

On May 18, 2012, Petitioner appealed his conviction to the California Court of Appeal, contending he was denied effective assistance of trial counsel based on his attorney's failure to seek a jury instruction for voluntary intoxication.  (Lodgment No. 3.) On March 6, 2013, the Court of Appeal affirmed the trial court's conviction and denied Petitioner's claim, finding there was insufficient evidence to support a voluntary intoxication instruction, and there was a reasonable explanation for trial counsel's decision not to request the instruction.  (Lodgment No. 6 at 10-11.)  On April 10, 2013, Petitioner filed a petition for review in the California Supreme Court, which was denied without comment on May 15, 2013.  (Lodgment Nos. 7-8.)

On August 21, 2014, Petitioner filed the instant Petition for Writ of Habeas Corpus. (ECF No. 1.)  Respondent filed an Answer on February 26, 2015, and Petitioner filed a Traverse on May 26, 2015.  (ECF Nos. 12, 22.)

/ / /

## II. DISCUSSION

Petitioner contends his trial counsel was ineffective for failing to request that the trial court instruct the jury on voluntary intoxication under CALCRIM No. 625. (ECF No. 1.) Respondent contends that Petitioner's claim was reasonably rejected by the state courts and therefore, federal habeas relief is precluded under 28 U.S.C. § 2254. (ECF No. 12.)

### A.   Standard of Review

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism & Effective Death Penalty Act of 1966 ("AEDPA") controls review of this petition. *See Lindh v.* Murphy, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that application: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1) and (2); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in the United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially

indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

"Clearly established Federal law" means the law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "Circuit precedent may provide 'persuasive authority' for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent, but "only Supreme Court holdings are binding on state courts, and 'only those holdings need be reasonably applied.'" *Rodgers v. Marshall*, 678 F.3d 1149, 1155 (9th Cir. 2012) (citation omitted); *see also Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005). "[W]hen a Supreme Court decision does not 'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal court "must defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable factual determinations made by the state courts, to which a statutory presumption of correctness attaches. 28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465, 475-74 (2007). To determine whether habeas relief is available under § 2254(d), the Court "looks through" to the last reasoned state court decision as the basis for its analysis. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-03 (1991).

### B.   Petitioner's Claim of Ineffective Assistance of Counsel for Failure to Request Jury Instruction on Voluntary Intoxication

Petitioner contends that his counsel was ineffective for failing to request a jury instruction on voluntary intoxication; specifically, that evidence of voluntary intoxication could negate the intent element that is required for first degree murder. Petitioner further argues that there was a reasonable probability he would have obtained a more favorable result had the instruction been given. (*Id.*) Respondent counters that the state court properly rejected Petitioner's claim because he failed to establish that his counsel's conduct was deficient pursuant to the standard provided in *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 12.) For the reasons set forth below, the Court agrees with Respondent.

Petitioner presented his ineffective assistance of counsel claim to the California Supreme Court, and it was denied without comment. (Lodgment Nos. 7, 8.) Accordingly, the Court will look through the silent denial to the last reasoned decision, which is the California Court of Appeal's March 6, 2013 decision. (Lodgment No. 6.) The California Court of Appeal rejected Petitioner's argument that his counsel was ineffective, as follows:

> [A]lthough there was evidence that [Petitioner] had been drinking alcohol earlier in the evening, the defense produced absolutely no evidence, from either lay or expert witnesses, that his drinking had any effect on his ability to formulate intent at the time of the shooting. To the contrary, the only evidence was that [Petitioner] had stopped drinking several hours before the shooting, and two of his coparticipants testified [Petitioner] did not appear "particularly drunk," was not "stumbling over," and was holding a conversation without slurring his words. Moreover, despite the alcohol consumption, [Petitioner] continued to manifest an ability *before* the shooting both to engage in purposeful and goal-directed behavior (e.g. by directing Ikonen to drive him to his mother's apartment where he was able to find and retrieve the shotgun inside the home) and to make decisions based on discrete and rational criteria (e.g. his decision not to escalate his assault on Westbrooks because Westbrooks was an "old man"). The evidence also showed he was able to engage in rational and goal directed-behavior *during, and in the immediate aftermath of, the shooting*: he directed Ikonen to "slow down" immediately before firing the fatal shot; he directed her to stop the car so he could remove evidence of his crime (the shotgun shell); he told her to "go, go, go" after returning to the car (suggesting he was subjectively able to appreciate the need to

escape); he twice stated "I think I just hit a girl," suggesting he was sufficiently sober that he could accurately perceive and recollect events; and he was able immediately to begin formulating and implementing a plan of escape (by ridding himself of the weapon and fleeing to Mexico to sanitize the escape vehicle). Finally, he admitted to Campbell he "didn't mean to shoot the girl [but instead] meant to hit the boy," suggesting his ability to engage in intended behavior was not impaired.

To establish a claim of ineffective assistance of counsel, [Petitioner] must show his counsel's conduct was deficient – that it fell below an objective standard or reasonableness under prevailing professional norms – and that he was prejudiced as a result, meaning a favorable verdict was reasonably probable had the instruction been given. (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1158.) Because there was no substantial evidence his condition was significantly impaired (*People v. Miller, supra,* 57 Cal.2d at pp. 830-831), must less that the level of inebriation made him unaware of what he was doing (*People v. Carpenter, supra,* 15 Cal.4th at p.395), there was insufficient evidence to support the instruction and therefore [Petitioner]'s trial counsel did not provide ineffective assistance of counsel by not requesting the instruction. (See *People v. McPeters* (1992) 2 Cal.4th 1148, 1173 [defense counsel not required to advance unmeritorious arguments].)

Separately, and alternatively, we also note the record is silent on why defense counsel did not pursue a voluntary intoxication defense at trial. . . . One plausible explanation for the dearth of lay or expert testimony to support a defense that [Petitioner]'s drinking impaired his ability to formulate intent at the time of the shooting is that defense counsel *did* investigate that avenue and could find no testimonial support to undermine the evidence to the contrary. A second tactical reason for not proffering the defense could have been that counsel believed proffering an intoxication argument that it perceived to be a weak argument would have detracted from the defense theory of the case: that [Petitioner] specifically intended to shoot into a park he reasonably believed was empty of people, and it was a tragic accident that someone was present in a dark park after 1:00 a.m. to be hit by the shot. Because this theory of accident was the proffered defense, counsel could have reasonably believed that asserting [Petitioner] was too intoxicated to form any intent could have been inconsistent with this argument.

. . .

Because there are reasonable tactical explanations for counsel's decision not to request a voluntary intoxication instruction, [Petitioner] has

> not shown his counsel was ineffective on direct appeal and must pursue this claim by petition for writ of habeas corpus.

(Lodgment No. 6 at 8-11 (emphasis in original).)

The "clearly established" United States Supreme Court precedent governing ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). *See Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States"). Under *Strickland*, a habeas corpus petitioner must show both incompetence of counsel and prejudice in order to justify issuance of the writ. *Strickland*, 466 U.S. at 688. However, the court need not address both prongs if the petitioner fails to make a sufficient showing of either one. *Id*. at 697.

A petitioner can establish incompetency by showing counsel's performance fell below an objective standard of reasonableness. *Id*. at 689. However, judicial scrutiny of counsel's performance should be highly deferential as there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. A petitioner can establish prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This means that a petitioner must demonstrate a reasonable probability that, absent the counsel's alleged error, the fact finder would have had a reasonable doubt respecting guilt. *Id*. at 695.

"Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (reversing a Ninth Circuit en banc grant of habeas relief on an ineffective assistance claim for lack of sufficient deference to the state court result.) "[T]he question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) ("We take a 'highly deferential' look at

counsel's performance . . . through the 'deferential lens of § 2254(d).'") (citation omitted). The petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Here, the Court of Appeal concluded that Petitioner's allegations failed to rise to the level of ineffective assistance of counsel under *People v. Palmer*, 133 Cal. App. 4th 1141, 1158 (2005). The legal standard in *Palmer* is the same as the federal standard for ineffective assistance claims. *See Palmer*, 133 Cal. App. 4th at 1158, *citing Strickland*, 466 U.S. 668 (1984). Therefore, the Court finds the Court of Appeal's decision was not contrary to clearly established federal law.

Further, the Court finds the state court's decision was not objectively unreasonable. As the Court of Appeal noted, there was insufficient evidence in the record that Petitioner's drinking rose to the level of "voluntary intoxication" as defined in *People v. Williams*, 16 Cal. 4th 635, 677-78 (1997). Further, given the deference to counsel's performance, the Court of Appeal reasonably concluded that there were tactical explanations for why trial counsel did not request the voluntary intoxication instruction. Either a lack of evidence that Plaintiff's drinking impaired his ability to formulate intent, or the probability that a voluntary intoxication argument would have detracted from the defense theory of the case, are both reasonable explanations for counsel's tactical decisions. As such, the Court concludes that the state court reasonably determined Petitioner failed to state a cognizable claim for ineffective assistance of trial counsel based on counsel's failure to request jury instruction on voluntary intoxication.

Accordingly, the Court **RECOMMENDS** that Petitioner's claim be **DENIED**.

## II.   CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Roger T. Benitez under 27 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Petition be **DENIED**.

**IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation, (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **October 19, 2015**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **October 29, 2015**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9h Cir. 1988); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9h Cir. 1991).

Dated: October 5, 2015

Hon. David H. Bartick
United States Magistrate Judge